# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

—————————

Nº 07-CV-4502 (JFB)(WDW)

—————————

GILBERT ROMAN,

Plaintiff,

VERSUS

NATIONAL SECURITY AGENCY,

Defendant.

—————————

**MEMORANDUM AND ORDER**
February 9, 2009

—————————

JOSEPH F. BIANCO, District Judge:

Plaintiff *pro se* Gilbert Roman ("plaintiff" or "Roman") brought the above-captioned action against the National Security Agency ("defendant" or "NSA"), seeking declaratory and injunctive relief ordering the NSA to produce records responsive to his requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006). Defendant has refused to confirm or deny the existence of the requested records, citing relevant FOIA exemptions. Defendant now moves for summary judgment dismissing plaintiff's complaint pursuant to Federal Rule of Civil Procedure 56(c). For the reasons stated herein, defendant's motion is granted in its entirety.

## I. BACKGROUND

### A. Facts

The Court has taken the facts described below from the parties' affidavits, exhibits and defendant's Local Rule 56.1 Statement of Facts ("Def.'s 56.1").[1] In ruling on a motion

—————————

[1] The Court notes that plaintiff failed to file and serve a response to defendant's Local Rule 56.1 Statement of Facts in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504-05 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district

for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2001).

On August 27, 2007, Roman filed a FOIA request with the NSA seeking the satellite time logs focused on New York and New Jersey from January 1985 through January 1991 and the total amount of hours a satellite was focused on those states. (Def.'s 56.1 ¶ 1.) By letter dated August 28, 2007, Deputy Associate Director for Policy, Rhea D. Siers, informed Roman that the NSA had processed his requests under FOIA but could neither confirm nor deny whether records responsive to those requests existed, pursuant to the first and third exemptions to FOIA, 5 U.S.C. §§ 552(b)(1), (3). (Def.'s 56.1 ¶ 2.) Specifically, she stated that the existence of such records or lack thereof was currently classified in accordance with Executive Order ("E.O.") No. 12958, 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by E.O. No. 13292, 68 Fed. Reg. 15315 (Mar. 25, 2003), and further exempt from disclosure under "Title 18 U.S. Code 798, Title 50 U.S.C. Code 403-1(i); and Section 6, Public Law 86-36 (50 U.S. Code 402 note)." (Def.'s 56.1 ¶¶ 3-4.) Roman timely appealed the decision to the

---

court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04 Civ. 2935 (ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Accordingly, in the exercise of its broad discretion and given plaintiff's *pro se* status, the Court will overlook this defect and will deem admitted only those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F. Supp. 2d at 504.

NSA's Deputy Director, who reviewed Roman's initial request, as well as his appeal, and upheld the decision of the Deputy Associate Director for Policy, informing Roman of his right to seek judicial review of the denial of appeal. (*Id.* ¶¶ 5-6.)

Plaintiff filed a second FOIA request with the NSA on December 4, 2007, seeking satellite surveillance records from January 1987 through December 2007 for New York and New Jersey. (*Id.* ¶ 7.) By letter dated December 20, 2007, the NSA's Chief of the FOIA/PA Office, Pamela N. Phillips, informed plaintiff that the NSA considered this request to be duplicative of his August 27, 2007 request and, therefore, it was administratively closing the request. (*Id.* ¶ 8.) Plaintiff disputes that this second request was duplicative, stating "in my opinion they are different request [sic]." (Plaintiff's Opposition Aff. ¶ 10.)

The NSA depends upon its signal intelligence ("SIGINT") mission to obtain information necessary to national defense by intercepting the communications of foreign governments. (Def.'s 56.1 ¶ 9.) The program is effective only when it is able to maintain secrecy regarding the identity of specific communications and the success of intercept operations; thus, disclosure of even a single communication could reveal the intelligence collection techniques employed against targets worldwide. (*Id.* ¶¶ 10-12.) Disclosure of the identity of targets, the degree of success in exploiting them, and the vulnerability of particular foreign communications would encourage countermeasures by the targets of the NSA's intelligence gathering efforts. (*Id.* ¶ 13.) Confirming the existence or non-existence of responsive records could disclose specific targeting details and/or information about the NSA's targeting capabilities and

therefore, that information is classified pursuant to Section 1.2(2) of E.O. No. 12958, as amended, and further exempted from disclosure under Section 6 of the National Security Agency Act of 1959 ("NSAA") and 18 U.S.C. § 798. (*Id.* ¶¶ 14-15, 19-20.) Moreover, the NSA cannot respond to each FOIA request in isolation, but rather must acknowledge that potential adversaries will examine all released information in totality and draw conclusions about the agency's intelligence-gathering capabilities and operations therefrom. (*Id.* ¶¶ 16-17.)

## B. Procedural History

On October 29, 2007, plaintiff *pro se* filed the instant action. On February 11, 2008, plaintiff submitted a letter to the Court seeking a "detailed indexing, justification and itemization . . . of actual portions of requested documents" pursuant to the decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1974).[2] By motion filed March 19, 2008, plaintiff renewed this request. On May 21, 2008, defendant moved for summary judgment. Plaintiff filed his opposition on June 9, 2008. Defendant replied on June 27, 2008. The Court has fully

---

[2] "[W]hen an agency seeks to withhold information, it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (internal quotations omitted). This list has become known as a "Vaughn" index, so named after the case which stated that "it is vital that the agency specify in detail which portions of [a] document are disclosable and which are allegedly exempt. This could be achieved by formulating a system of itemizing and indexing that would correlate statements made in the Government's refusal justification with the actual portions of the document." *Vaughn*, 484 F.2d at 827.

considered the submissions of both parties.

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id*. at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

Moreover, where the plaintiff is proceeding *pro se*, the Court must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)). Though a *pro se* litigant's pleadings are afforded wide latitude, a *pro se* party's "bald assertion," completely unsupported by evidence, is not sufficient to defeat a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Instead, to overcome a motion for summary judgment, the non-moving party "must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (internal citations omitted); *see also Morris v. Ales Group USA, Inc.*, No. 04 Civ. 8239 (PAC), 2007 U.S. Dist. LEXIS 47674, at *10 (S.D.N.Y. June 28, 2007)

("[T]o survive summary judgment, plaintiff's facts 'must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions.'") (quoting *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981)).

## III. DISCUSSION

The central purpose of FOIA is to "ensure an informed citizenry . . . [which is] needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *accord U.S.D.O.J. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (citation omitted). Under the statute, "any member of the public is entitled to have access to any record maintained by a federal agency, unless that record is exempt from disclosure under one of the Act's nine exemptions." *A. Michael's Piano. Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994), *cert. denied*, 513 U.S. 1015 (1994); *accord Ortiz v. Dep't of Health and Human Servs.*, 70 F.3d 729, 732 (2d Cir. 1995), *cert. denied*, 517 U.S. 1136 (1996). FOIA confers jurisdiction on the district courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B); *U.S.D.O.J. v. Tax Analysts*, 492 U.S. 136, 142 (1989). However, "jurisdiction is dependent on a showing that an agency has (1) improperly (2) withheld (3) agency records. Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." *Tax Analysts*, 492 U.S. at 142 (internal quotations and citation omitted).

Accordingly, "[i]t is the responsibility of the federal courts to conduct *de novo* review when a member of the public challenges an agency's assertion that a record being sought is exempt from disclosure. The burden of proof, upon such review, rests with the agency asserting the exemption, with doubts resolved in favor of disclosure." *A. Michael's Piano. Inc.*, 18 F.3d at 143 (quoting *Federal Labor Relations Auth. v. United States Dep't of Veterans Affairs*, 958 F.2d 503, 508 (2d Cir. 1992)). "Affidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden . . . [and] are accorded a presumption of good faith." *Carney v. U.S.D.O.J.*, 19 F.3d 807, 812 (2d Cir. 1994) (citation omitted); *see also Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993); *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) (per curiam); *Malizia v. U.S.D.O.J.*, 519 F. Supp. 338, 342 (S.D.N.Y. 1981). When agency submissions are adequate on their face, a district court has the discretion to "forgo discovery and award summary judgment on the basis of affidavits." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980); *accord Maynard*, 986 F.2d at 556 n.8; *Simmons v. U.S.D.O.J.*, 796 F.2d 709, 711-12 (4th Cir. 1986). "In order to avoid summary judgment and proceed to discovery once the defending agency has satisfied its burden, 'the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations.'" *Labella v. FBI*, No. 07 Civ. 2330, 2008 WL 2001901, at *6 (E.D.N.Y. May 8, 2008) (quoting *Carney*, 19 F.3d at 812); *Carter v. U.S. Dep't of Comm.*, 830 F.2d 388, 393 (D.C. Cir. 1987) ("[T]he mere allegation of bad faith does not undermine the sufficiency of agency submissions. There must be tangible evidence of bad faith; without it the court should not question the veracity of agency submissions.") (citations omitted).

Because plaintiff is representing himself *pro se*, the Court has construed his papers liberally.

Plaintiff argues that defendant has unlawfully withheld requested information in violation of 5 U.S.C. § 552 (2006). Defendant submits that the information is exempted from disclosure by two FOIA provisions which protect, respectively, information that is "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . [is] in fact properly classified pursuant to such Executive order," and information that is "specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. §§ 552(b)(1), (3). Plaintiff, in response, seems to argue that the surveillance program at issue is not being used for purposes of the national defense, but rather to "violate[] [his] privacy and the privacy of the American people on demand," (Plaintiff's Opposition Aff. ¶ 5), and thus is unlawful unto itself. For the foregoing reasons, the Court finds plaintiff's arguments unavailing and determines that because the requested information properly falls into FOIA Exemption 3, (as well as Exemption 1), defendant's motion for summary judgment must be granted in its entirety.

A. The Glomar Response

In denying plaintiff's FOIA requests, the NSA invoked what is commonly known as the "Glomar Response." *See Phillippi v. CIA*, 546 F.2d 1009, 1012 (D.C. Cir. 1976) (in

denying FOIA request for records pertaining to the Glomar Explorer, an oceanic research vessel, the CIA stated that the "existence or nonexistence of the requested records was itself a classified fact exempt from disclosure under . . . FOIA" and "in the interest of national security, involvement by the U.S. Government in the activities which are the subject matter of [Phillippi's] request can neither be confirmed nor denied."). Courts have determined that this is an appropriate agency response to a FOIA request when acknowledging the existence of the requested records "would remove any lingering doubts that a foreign intelligence service might have on the subject, and [where] the perpetuation of such doubts may be an important means of protecting national security." *Frugone v. CIA*, 169 F.3d 772, 774-75 (D.C. Cir. 1999) (citation omitted).[3]

An agency may not simply invoke the Glomar Response, but must also link it to an appropriate FOIA exemption and explain why the requested information falls within the ambit

---

[3] The Court recognizes that the Second Circuit has yet to address the legality of the Glomar Response under FOIA, but notes that it has been accepted in other circuits. *See Carpenter v. U.S.D.O.J.*, 470 F.3d 434, 436-37 (1st Cir. 2006); *Bassiouni v. CIA*, 392 F.3d 244, 246 (7th Cir. 2004); *Hunt v. CIA*, 981 F.2d 1116, 1117 (9th Cir. 1992). Moreover, "the Second Circuit has evidenced a willingness to look to the law of other circuits – particularly the D.C. Circuit – in the area of FOIA, even when it has not specifically adopted other circuits' law. This is especially the case when the Second Circuit defines the contours of the FOIA exemptions." *Wilner v. NSA*, No. 07 Civ. 3883, 2008 U.S. Dist. LEXIS 48750, at *8 (S.D.N.Y. June 25, 2008) (citing *Inner City Press/Comm. on the Move v. Bd. of Governors of Fed. Reserve Sys.*, 463 F.3d 239, 244-45 (2d Cir. 2006); *Tigue v. U.S.D.O.J.*, 312 F.3d 70, 77-78 (2d Cir. 2002)). The Court finds the reasoning in the decisions in these other circuits to be persuasive.

of that exclusion. *See Wilner v. NSA*, No. 07 Civ. 3883, 2008 U.S. Dist. LEXIS 48750, at *8 (S.D.N.Y. June 25, 2008). Here, the NSA has cited the Glomar Response pursuant to FOIA Exemptions 1 and 3. Because the Court finds *infra* that defendant has properly met its burden in establishing that the Glomar Response is appropriate under FOIA Exemption 3, it need not consider the applicability of Exemption 1. *See id*. at *11 ("Defendants need only proffer one legitimate basis for invoking the Glomar Response in order to succeed on their motion for summary judgment."). In any event, the Court concludes, in the alternative, that defendant has also met its burden under Exemption 1.

## B. Exemption Three

Defendant submits that the information requested warrants the Glomar Response pursuant to FOIA Exemption 3, which protects information "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The Supreme Court has set forth a two-part analysis for courts reviewing an agency's invocation of Exemption 3. *CIA v. Sims*, 471 U.S. 159, 167 (1985). First, the court must determine whether the statute designated by the withholding agency is one properly within the bounds of Exemption 3. *See id*. If so, the court must then determine whether the withheld information meets the requirements of that statute. *See id*.; *see also A. Michael's Piano, Inc.*, 18 F.3d at 143; *Fitzgibbon v. CIA*, 911 F.2d 755, 761 (D.C. Cir. 1990); *ACLU v. DOD*, 389 F. Supp. 2d 547, 554 (S.D.N.Y. 2005).

Here, defendant cites to Section 6 of the National Security Agency Act of 1959

("NSAA") as the relevant statute,[4] which provides, in part, that "nothing in this Act or *any other law . . .* shall be construed to require the disclosure of the organization or any function of the National Security Agency, of any information with respect to the activities thereof, or of the names, titles, salaries, or number of persons employed by such agency." Pub. L. No. 86-36, § 6, 73 Stat. 63, 64 (codified at 50 U.S.C. § 402 *note* (2007)) (emphasis added). As to the first prong of the *Sims* framework, it is well-established that FOIA Exemption 3 properly encompasses Section 6 of the NSAA. *Wilner*, 2008 U.S. Dist. LEXIS 48750, at *13; *see Linder v. NSA*, 94 F.3d 693, 698 (D.C. Cir. 1996) (stating that "[t]he protection afforded by section 6 is, by its very terms, absolute. If a document is covered by section 6, NSA is entitled to withhold it . . . ."); *Founding Church of Scientology of Washington, D.C., Inc. v. NSA*, 610 F.2d 824, 828 (D.C. Cir. 1979); *Hayden v. NSA*, 608 F.2d 1381, 1389 (D.C. Cir. 1979). Regarding the second prong, as to whether the withheld information falls within the ambit of the cited provision of the NSAA, defendant has offered the declaration of Rhea D. Siers, Deputy Associate Director for Policy, who states that either confirming or denying the existence of the records plaintiff seeks would threaten the efficacy of the SIGINT program, which is one of the NSA's primary functions. (Siers. Decl. ¶¶ 4, 20, 22.) Siers specifically notes that "SIGINT is one of NSA's three primary functions . . . . A primary SIGINT mission of NSA is to intercept communications in order to obtain foreign intelligence information necessary to the national defense, national security, or the conduct of the foreign affairs of the United States." (*Id*. ¶ 4.) Further,

> SIGINT technology is both expensive and fragile. Public disclosure of either the capability to collect specific communications or the substance of the information itself can easily alert targets to the vulnerability of their communications. Disclosure of even a single communication holds the potential of revealing the intelligence collection techniques that are applied against targets around the world . . . . If a target is successful in defeating an intercept operation, all of the intelligence from that source is lost unless and until NSA can establish new and equivalent exploitation of the foreign power's signals. If a source becomes unavailable, the military, national policymakers, and the intelligence community must operate without the information the signals provided.

(*Id*. ¶¶ 8-9.) The Court finds that the declaration of Siers is "reasonably detailed," *Carney*, 19 F.3d at 812, and adequately demonstrates that the information sought by plaintiff relates to the "function[s] of the National Security Agency" under Section 6 of

---

[4] Defendant also argues that the requested information is properly withheld under FOIA Exemption 3 pursuant to 18 U.S.C. § 798; however, because the Court finds that Section 6 of the NSAA protects the information from disclosure, it need not review the applicability of the remaining statute.

the NSAA.[5]   Indeed, courts have noted that "[t]here can be no doubt that the disclosure of SIGINT reports would reveal information concerning the activities of the agency," as "'signals intelligence is one of [NSA's] primary functions'; and the release of the reports would 'disclose information with respect to [NSA] activities, since any information about an intercepted communication concerns an NSA activity.'"  *Linder v. NSA*, 94 F.3d 693, 696 (D.C. Cir. 1996) (quoting *Hayden v. NSA*, 608 F.2d 1381, 1389 (D.C. Cir. 1979)).

Further, plaintiff has made no showing of bad faith on the part of defendant, as required to defeat the instant motion, nor does he argue that FOIA Exemption 3 does not apply.  Instead, plaintiff makes conclusory allegations about how the SIGINT program is being employed by the NSA in a presumably illegal fashion.  (*See* Plaintiff's Opposition Aff. ¶ 5 ("My basis for requesting satellite time logs, satellite records, is to slowly prove they have violated my privacy and the privacy of the American people on demand."); *id*. ¶ 16 ("I need this information

to prove or support claims of invasion of privacy.").)   Even construing plaintiff's opposition broadly so as to afford him the best possible available argument, the Court concludes that it need not consider any allegation of the underlying illegality of SIGINT, as it is clear by the plain language of both FOIA Exemption 3 and Section 6 of the NSAA that defendant appropriately invoked the Glomar Response. *See Wilner*, 2008 U.S. Dist. LEXIS 48750, at \*17 ("The Court need not address plaintiffs' substantive arguments concerning the [SIGINT program's] legality, however, because the language of FOIA Exemption 3 and Section 6 of the NSAA makes clear that the defendants permissibly refused to disclose the information requested by plaintiffs."); *People for the Amer. Way Found. v. Nat'l Sec. Agency/Central Sec. Serv.*, 462 F. Supp. 2d 21, 31 (D.D.C. 2006) ("Whether . . . one of the NSA's many SIGINT programs involving the collection of electronic communications, is ultimately determined to be unlawful, its potential illegality cannot be used in this case to evade the unequivocal language of Section 6, which prohibits the disclosure of information relating the NSA's functions and activities . . . .") (internal quotation and citation omitted). Accordingly, since the information plaintiff seeks is "exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), specifically, Section 6 of the NSAA, the Court finds that plaintiff's request for an order directing the NSA to produce the desired material must be denied.[6] *See Wilner*, 2008 U.S. Dist. LEXIS

---

[5]  Moreover, to the extent that plaintiff seeks an *in camera* review of the materials he seeks, (*see* Plaintiff's Opposition Aff. ¶ 27), the Court first notes that "[w]here nondisclosure can be assessed based on affidavits, *in camera* inspection is not necessary." *O'Keefe v. U.S. Dep't of Defense*, 463 F. Supp. 2d 317, 329 (E.D.N.Y. 2006) (citing *Local 3 Intern. Broth. of Elec. Workers, AFL-CIO v. N.L.R.B.*, 845 F.2d 1177, 1180 (2d Cir. 1988)); *see also Carter v. United States Dep't of Commerce*, 830 F.2d 388 (D.C. Cir. 1987) (in deciding whether to conduct *in camera* review, court should consider whether an agency's affidavits are sufficiently detailed, and whether there has been a showing of bad faith).   Second, any *in camera* review of requested materials would necessarily confirm their existence, thus eviscerating defendant's Glomar Response, which the Court accepts as permissible under FOIA Exemption 3 in the instant action.

[6]  The Court also denies plaintiff's requests for a *Vaughn* index of the requested materials, filed on February 11 and March 19, 2008, respectively, as any such index would necessarily require the NSA to either confirm or deny the existence of such information. *Pipko v. CIA*, 312 F. Supp. 2d 669, 680 (D.N.J. 2004) ("[W]here the Government

48750, at *17-*18 (NSA properly invoked Glomar Response under FOIA Exemption 3 in withholding requested SIGINT surveillance information); *see also People for the Amer. Way Found.*, 462 F. Supp. 2d at 31 (same).[7]

_____

issues a Glomar response – when the FOIA exemption would itself preclude the acknowledgment of such documents – no *Vaughn* affidavit is necessary."); *see Linder*, 94 F.3d at 697 (in holding that no *Vaughn* index was required of requested SIGINT materials, stated that requiring such an index "could cause the very harm that section 6 was intended to prevent.").

[7] In the alternative, the Court finds that the Glomar Response is also properly invoked under FOIA Exemption 1, which protects from disclosure information which is "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . [is] in fact properly classified pursuant to such Executive order," 5 U.S.C. § 552(b)(1), and E.O. 12958, which classifies material if "the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, . . . and the original classification authority is able to identify or describe the damage." E.O. 12958, § 1.1(a). The detailed declaration of Rhea D. Siers has adequately demonstrated that the information sought by plaintiff is properly classified under E.O. 12958 as information which could threaten national security and, therefore, is exempt from either agency confirmation or denial of its existence. *See, e.g. Students Against Genocide v. Dep't of State*, 257 F.3d 828, 837 (D.C. Cir. 2001) (information properly classified under E.O. 12958 was properly withheld under FOIA Exemption 1); *Badrawi v. Dep't of Homeland Sec.*, – F. Supp. 2d –, No. 3:07 Civ. 372, 2009 WL 103361, at *4 (D. Conn. Jan. 14, 2009) (same); *Talbot v. CIA*, 578 F. Supp. 2d 24, 28 (D.D.C. 2008) (same); *Makky v. Chertoff*, 489 F. Supp. 2d 421, 440-41 (D.N.J. 2007) (same); *People for the Amer. Way Found.*, 462 F. Supp. 2d at 31-34 (same); *Pipko v. CIA*, 312 F. Supp. 2d 669, 678 (D.N.J. 2004) (same).

IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56(c), is granted. The Clerk of the Court is directed to enter judgment accordingly and close this case.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated:     February 9, 2009
           Central Islip, NY

Plaintiff is representing himself *pro se*: Gilbert Roman, 95-25 77th Street, Ozone Park, New York, 11416. The attorney for defendant is Robert B. Kambic, United States Attorneys' Office, 610 Federal Plaza, Central Islip, New York, 11722.